IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO.  22-12675

KINSALE INSURANCE COMPANY,        :

   Plaintiff/Appellee,                          :

vs.                                                          :

PRIDE OF ST. LUCIE LODGE 1189,        :
INC., et al.,
                                                     :

   Defendant/Appellants.
_____        :

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Kinsale Insurance Company v. Pride of St. Lucie etc., et al.
Case No. 2:21-cv-14053-KMM

INITIAL BRIEF OF APPELLANT
TEAIRA NICOLE REED, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF TANYA RENEE OLIVER

James C. Blecke
Counsel for Reed
The Haggard Law Firm
330 Alhambra Circle, First Floor
Coral Gables, Florida 33134
Telephone (305) 446-5700
Facsimile (305) 446-1154
jcb@haggardlawfirm.com

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Bahadoran, Sina                         Counsel for Kinsale Insurance

Blecke, James C.                        Counsel for Teaira Nicole Reed

Christ, Matthew T.                      Counsel for Pride of St. Lucie Lodge

Clyde & Co US LLP                       Counsel for Kinsale Insurance

Cunningham, Fred A.                     Counsel for Pride of St. Lucie Lodge

Domnick Cunningham & Whalen            Counsel for Pride of St. Lucie Lodge

Haggard, Michael A.                     Counsel for Teaira Nicole Reed

Kinsale Insurance Company              Plaintiff

Moore, Hon. K. Michael                 U.S. District Court Judge

Podhurst Orseck, P.A.                  Counsel for Pride of St. Lucie Lodge

Pride of St. Lucie Lodge 1189, Inc.   Defendant/Counterclaimant

Reed, Teaira Nicole,
      as Personal Representative of
      the Estate of Tanya Renee Oliver   Defendant/Counterclaimant

Rosenthal, Stephen F.                  Counsel for Pride of St. Lucie Lodge

The Haggard Law Firm, P.A.            Counsel for Teaira Nicole Reed

Warren, Aaron                          Counsel for Kinsale Insurance

ii

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents record facts to be viewed in the light most favorable to the non-moving parties, facts to be accepted for purposes of reviewing a summary judgment *de novo*.  Should Kinsale contest those facts, then the parties and this Court may benefit from oral argument to address and resolve any such factual issues.

Resolution of disputed questions of Florida's bad faith law may likewise benefit from oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

INTRODUCTION ................................................................. 1

STATEMENT OF SUBJECT MATTER AND
APPELLATE  JURISDICTION ................................................................. 1

ISSUE ON APPEAL ................................................................. 2

       WHETHER THE TRIAL COURT ERRED IN
       ENTERING SUMMARY JUDGMENT BASED
       ON POWELL V. PRUDENTIAL ........................................................ 2

STATEMENT OF THE CASE ................................................................. 2

STATEMENT OF THE FACTS ................................................................. 2

STANDARD OF REVIEW ................................................................. 5

SUMMARY OF ARGUMENT ................................................................. 5

ARGUMENT ................................................................. 6

       THE TRIAL COURT ERRED IN ENTERING
       SUMMARY JUDGMENT BASED ON
       POWELL V. PRUDENTIAL ........................................................ 6

CONCLUSION ................................................................. 14

CERTIFICATE OF COMPLIANCE ................................................................. 15

CERTIFICATE OF SERVICE ................................................................. 15

<u>TABLE OF CITATIONS</u>

<u>Cases</u>

\* *Berges v. Infinity Insurance Company*,
  896 So.2d 665 (Fla. 2005) ........................................................ 9

\* *Harvey v. GEICO General Insurance Company*,
  259 So.3d 1 (Fla. 2018) .................................................... 9, 10

  *Markel American Insurance Company v. Flugga*,
  2013 WL 1289522 (M.D. Fla. 2013)............................................. 11, 12

  *Moore v. GEICO General Insurance Company*,
  633 Fed.Appx. 924 (11th Cir. 2016) ..................................... 5

\* *Powell v. Prudential Property & Casualty Company*,
  584 So.2d 12 (Fla. 3d DCA 1991), *rev. den.*,
  598 So.2d 77 (Fla. 1992) ............................................. passim

  *Rova Farms Resort, Inc. v. Investors Ins. Co.*,
  65 N.J. 474, 323 A.2d 495 (1974) ................................. 6-8, 11

  *Self v. Allstate Insurance Company*,
  345 F.Supp. 191 (M.D. Fla. 1972).................................... 5, 8


<u>Statutes</u>

  28 U.S.C. § 1291 ............................................................... 1

  28 U.S.C. § 1332 ............................................................... 1

  28 U.S.C. § 2201 ............................................................... 1

  Section 768.81(3), Florida Statutes ...................................... 12


<u>Rules</u>

  Local Rule 56.1(a)(2) ......................................................... 2

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO.  22-12675

KINSALE INSURANCE COMPANY,              :

    Plaintiff/Appellee,                              :

vs.                                                                 :

PRIDE OF ST. LUCIE LODGE 1189,          :
INC., et al.,
                                                                       :
    Defendant/Appellants.
_____          :

## INTRODUCTION

This initial brief is filed by the counterclaimant/appellant, Teaira Nicole Reed, as Personal Representative of the Estate of Tanya Renee Oliver ("Reed").

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had original subject matter jurisdiction over the declaratory judgment action and counterclaims under 28 U.S.C. §§ 1332 and 2201, based on diversity of citizenship and amount in controversy.  The judgment disposing of all parties' claims was entered July 17, 2022 (DE 142).  Reed's notice of appeal was filed August 12, 2022 (DE 145).

This is an appeal from the final decision of the U.S. District Court on the appellants' counterclaims.  This Court has jurisdiction under 28 U.S.C. § 1291.

<u>ISSUE ON APPEAL</u>

WHETHER THE TRIAL COURT ERRED
IN  ENTERING SUMMARY JUDGMENT
BASED ON POWELL v. PRUDENTIAL.

<u>STATEMENT OF THE CASE</u>

Reed accepts the trial court's Order (DE 142, p 1), as a workable statement of the case.  Reed disputes the trial court's recitation of facts and conclusions of law, and contests the resulting summary judgment.

<u>STATEMENT OF THE FACTS</u>

Reed adopts by reference Reed's Local Rule 56.1(a)(2) statement of material facts 71–98 (DE 107) ("SOF").  Regardless of whether Kinsale flagged them as undisputed or disputed (DE 125), they are supported by the cited record references and remain record facts viewed, for purposes of review of the summary judgment, in the light most favorable to Reed, the non-moving party.

Reed emphasizes the following numbered facts (DE 107, pp 6-13):

"71.  The media news articles contained in the November 23, 2015 Kinsale claim file Note Report . . . include the following: "The Victim, Tanya Oliver, 24, remains in critical condition in the ICU.  She was shot in the head early Monday morning while sitting in a car in the parking lot of the Elks Lodge on Avenue M, which turns into a nightclub on the weekends." (Note Report; DE 98 pp 30-31).

- 2 -

"80.  Ms. Thrift's initial note in the Kinsale Note Report, dated November 23, 2015, says: "loss is a shooting in the rear parking lot of insured property arising out of an argument that began inside the club."  (Thrift decl. Ex. G; DE 98 p 32).

"81.  On December 2, 2015 Mr. Knight tells Ms. Thrift: "two individuals started causing a problem and they were asked to leave the building, they left and went into the back parking lot where shooting occurred."  (Thrift decl. Ex. G; DE 98 p 31).

"82.  On December 3, 2015, Kinsale sent an eight page reservation of rights letter to the Lodge (Thrift depo. Ex. 36; DE 87 pp 140-147).

"83.  The December 3, 2015 letter describes the incident as follows:

> [A]n altercation began inside the Lodge between Patricia Almore ("Almore") and an unknown female.  Security removed the women from the Lodge, and the women began arguing in the rear parking lot of the Lodge.  It is believed Curtia Sharee Reed ("Reed"), driving a silver SUV, blocked Almore's vehicle in the rear parking lot and began shooting into Almore's vehicle.  Tanya Oliver, a front passenger in Almore's vehicle, suffered a gunshot wound to the forehead and was transported to the hospital.  [DE 87 p 140].

"94.  Mr. Landy undertook the representation of Ms. Reed and her mother because liability was clear from the outset.  (Landy depo. 14:12-16, 30:7-31:11, 31:22-32:5, 64:15-19; DE 90 pp 5, 9, 17).

"96.  Mr. Haggard, lead counsel for Ms. Reed in the underlying action, testified:

> [T]he first thing you look at is, is there liability.  And liability here was clear, because this is a violation of every standard, every manager at every bar in the United States of America is going to tell you, if two groups get in a fight or two people get physical or really even a highly verbal altercation, that you have to make sure that they leave. And when we say leave, we don't mean just put them outside in the parking lot to go to round two of the fight, but to have them leave the premises and you watch them leave. So once we saw that in the really easy (sic) police report the discussion with Christopher the whole time was we got great liability, clear liability in this case.  [Haggard depo. 44:19-45:9; DE 91 p 13].
>
> *    *    *
>
> And once we knew that they put these people outside, and they started again, and there was no security out there, and they didn't stop it and this happened, we felt there was clear liability at that point.  And you can go through the end of trial and that's how the testimony really comported with everything that we learned in the beginning.  [Haggard depo. 63:12-20; DE 91 p 17].

"97.  Kinsale retained the Hamilton, Miller & Birthisel law firm to defend the Lodge.  In his initial quarterly report, Mr. Hamilton told Ms. Thrift liability was 80-85%.  "In our opinion, the likelihood of a favorable outcome is 15% to 20%." (Ex. "D," Kinsale document production bates stamped KINSALE 00991-995; January 20, 2017 quarterly report, p 2).

- 4 -

STANDARD OF REVIEW

> A district court's grant of summary judgment is reviewed de novo. . . .  We must view all the evidence and draw all reasonable factual inferences in favor of the nonmovant.  *Id*.  "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."

*Moore v. GEICO General Ins. Co.*, 633 Fed.Appx. 924, 927 (11th Cir. 2016).

SUMMARY OF ARGUMENT

Ms. Thrift never evaluated the Lodge's liability exposure.  Had she done so, she would have found the Lodge's liability to be clear, just as Mr. Landy, Mr. Haggard, and Mr. Hamilton did on their initial evaluations.  Each found liability was clear on the same facts known to Kinsale in December 2015.

Apart from record facts precluding summary judgment under *Powell v. Prudential Property & Casualty Company*, 584 So.2d 12 (Fla. 3d DCA 1991), *rev. den.*, 598 So.2d 77 (Fla. 1992), the trial court misinterpreted *Powell* in a manner contrary to Florida's established "totality of the circumstances" bad faith case law.

*Powell* says, when "a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations."  Here the excess judgment was more than likely, it was inevitable.  Kinsale "had an affirmative duty to explore settlement possibilities and did not do so."  See, *Self v. Allstate Insurance Company*, 345 F.Supp. 191, 197 (M.D. Fla. 1972).

- 5 -

ARGUMENT

THE TRIAL COURT ERRED IN ENTERING
SUMMARY JUDGMENT BASED ON
POWELL v. PRUDENTIAL.

*Powell* says: "Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations."  In context, *Powell* says:

> *Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause.* [citation omitted].  Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations.  [citation omitted]; *Rova Farms Resort, Inc. v. Investors Ins. Co.,* 65 N.J. 474, 323 A.2d 495 (1974) (*where substantial injuries and potential liability of insured are obvious, failure to offer policy limits constitutes bad faith even where there is no assurance that action can be settled*).  [584 So.2d at 14; e.s.].

Bad faith may be inferred from Kinsale's delay in settlement negotiations which was willful and without reasonable cause.  *Id.*  Kinsale's waiting eight months to offer policy limits in the absence of a formal demand was inexplicable.

*Powell*'s citation of *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 323 A.2d 495 (1974), is noteworthy.  In *Rova Farms*, the plaintiff never made a formal settlement demand, and the insurer regarded the case as one of "questionable liability."  323 A.2d at 503.  The plaintiff suffered catastrophic injuries when he

- 6 -

dove from a platform into shallow murky water on Rova Farms' resort property. 323 A.2d at 479. "Investors and its counsel seemed quite sanguine as to the prospect of convincing a jury of [Plaintiff's] contributory negligence." 323 A.2d at 503. An Investors' case evaluation card said: "severe injury—weak liability." 323 A.2d at 503, n 5. *Rova Farms* says:

> [A] decision not to settle must be a thoroughly honest, intelligent, and objective one. It must be a realistic one when tested by the necessarily assumed expertise of the company. This expertise must be applied, in a given case, to a consideration of All the factors bearing upon the advisability of a settlement for the protection of the insured. *While the view of the carrier or its attorney as to liability is one important factor, a good faith evaluation requires more. It includes consideration of the anticipated range of a verdict, should it be adverse; the strengths and weaknesses of all of the evidence to be presented on either side so far as known*; the history of the particular geographic area in cases of similar nature; and the relative appearance, persuasiveness, and likely appeal of the claimant, the insured, and the witnesses at trial. . . . [*A*]*s to liability, the question is not whether the carrier, its attorney, or the insured considers a defendant liable but that the jury could be justified in finding from the evidence available and adduced*. [65 N.J. at 489-90, 323 A.2d at 503-4; e.s.].

With respect to an insurer's good faith obligations, *Rova Farms* says:

> *The better view is that the insurer has an affirmative duty to explore settlement possibilities.* Self v. Allstate Ins. Co., 345 F.Supp. 191, 197 (M.D.Fla. 1972). At most, *the absence of a formal request to settle within the policy is merely one factor to be considered in light of the surrounding circumstances, on the issue of good faith*. [65 N.J. at 493, 323 A.2d at 505; citations omitted; e.s.].

*Rova Farms* cites Florida precedent and supports a totality of the circumstances approach to bad faith.  *Self v. Allstate Insurance Company*, 345 F.Supp. 191, 197 (M.D. Fla. 1972), concludes:

> This Court holds that Allstate had an affirmative duty to explore settlement possibilities and did not do so.  It is, therefore, liable to the plaintiff in this case for the full amount of the liability imposed upon her, as a result of the Kilian trial.

In this case, Kinsale had an affirmative duty to explore settlement possibilities and did not do so.  The absence of a formal request to settle within the policy is merely one factor to be considered in light of the surrounding circumstances, on the issue of good faith.

Focusing on the word "clear" in the full published *Powell* decision ignores the question presented and decided in *Powell*:

> The question presented is whether evidence that the claimant made no specific monetary demand, and subsequently rejected the insurer's tender of the policy limits, entitle the insurer to a judgment as a matter of law without consideration of other circumstances.  *We hold that those facts are only two of a number of circumstances to be weighed by the fact-finder, and reverse.*  [584 So.2d at 13; e.s.].

*Powell* supports a weighing of the totality of the circumstances.  Contrary to the trial court's interpretation, *Powell* did not create a bright line or checklist preemption or exemption from "totality of the circumstances" bad faith liability.

- 8 -

The Florida Supreme Court says in *Berges v. Infinity Insurance Company*, 896 So.2d 665, 680 (Fla. 2005): "In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard."

*Harvey v. GEICO General Insurance Company*, 259 So.3d 1, 6-7 (Fla. 2018), reaffirms and reinforces four decades of bad faith law in Florida:

> The obligations set forth in *Boston Old Colony* are not a mere checklist. An insurer is not absolved of liability simply because it advises its insured of settlement opportunities, the probable outcome of the litigation, and the possibility of an excess judgment. Rather, the critical inquiry in a bad faith (sic) is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment. "[T]he question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." Further, it is for the jury to decide whether the insurer failed to "act in good faith with due regard for the interests of the insured." . . . .
>
> In a case "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." In such a case, where "[t]he financial exposure to [the insured] [i]s a ticking financial time bomb" and "[s]uit c[an] be filed at any time," any "delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith." [citations omitted throughout].

To paraphrase *Harvey*, the obligations under the case law are not a mere checklist. An insurer is not absolved of liability simply because the insurer somehow fails to evaluate its insured's liability or acknowledge evidence of clear liability.

Based on the information contained in Kinsale's claim file in December 2015, Kinsale knew or should have known the financial exposure to the Lodge was a ticking financial time bomb, and suit could be filed at any time. The eight month delay in making an offer under the circumstances is evidence of bad faith. *Id*.

The trial court repeatedly cites *Powell* for the following proposition:

> *Powell* instructs that an insurer's affirmative duty to initiate settlement negotiations exists *only* "where liability is clear." *Powell*, 584 So. 2d at 14.        [DE 142, p 8; e.s.].

> *Powell* imposes an affirmative duty to initiate settlement negotiations *only* "where liability is clear." *Powell*, 584 So. 2d at 14.                    [DE 142, pp 8-9; e.s.].

> The *only* way Kinsale could have acted in bad faith is if Kinsale had an "affirmative duty to initiate settlement negotiations" under *Powell*.            [DE 142, p 9; e.s.].

The inverse fallacy is apparent. "Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations" does *not* mean: Where liability is *un*clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has *no* affirmative duty to initiate settlement negotiations.

The trial court says: "Reed and the Lodge cite no case—and the Court's own research has found none—in which an insurer committed bad faith under *Powell* in the face of unclear liability for its insured." (DE 142, p 9). Reed cited *Rova Farms*, an unclear, questionable liability case found in *Powell* (DE 108, pp 11-12).

Reed also cited *Markel American Insurance Company v. Flugga*, 2013 WL 1289522 (M.D. Fla. 2013) (DE 108, pp 16-17). *Markel* makes no mention of whether liability was clear or unclear at the outset.

*Markel* describes what was known by the insurer at the outset. The insured motorcycle collided with a car, seriously injuring the passenger on the motorcycle. Vehicle collisions invite potential comparative fault defenses. Retrospectively, "[t]he details of the accident do not matter." *Markel*, at *2.

The trial court misquotes *Markel* at page nine of its order:[1]

> *Markel Am. Ins. Co. v. Flugga*, No. 5:11-cv-588, 2013 WL 1289522, at *2 (M.D. Fla. Mar. 13, 2013) ("[I]t was undisputed that [the insured] was at fault."). [DE 142, p 9].

*Markel Am. Ins. Co. v. Flugga*, at *2 actually says:

> The details of the accident do not matter. It *is now* undisputed that Mark Flugga was at fault and that his negligence was *a* cause of the collision. It is also *presently* undisputed that the riders on the motorcycle, Mark Flugga and his passenger Tina Baker, were both seriously injured. [e.s.].

---

[1] The source of the misquotation is Kinsale's Reply in Support of its Motion for Final Summary Judgment (DE 124, p 9). Kinsale converted the *Markel* quote from present tense to past tense.

In this case as in *Markel*, it is *now* undisputed the Lodge was at fault and that its negligence was *a* cause of the parking lot shooting. It is *now* undisputed, precisely because the jury found the Lodge was at fault and its negligence *a* cause of Tanya Oliver's death, with the jury apportioning fault as required under Section 768.81(3), Florida Statutes.

By statute, the Lodge is 100% responsible for 70% of the seven figure damages it caused. *Id*. That is 100% clear liability for a measure of damages far in excess of policy limits. Comparative fault is a mitigation of damage defense, not a defense to liability.

*Markel* concludes its Florida bad faith law analysis and says at *4:

> In this case, given the minimal coverage of $10,000.00 as compared to the known injuries suffered by Tina Baker, coupled with her retention of a lawyer to press her claim and the time that elapsed from the date of the accident to the tender of the policy limits, there is a genuine issue of fact as to whether, on the basis of the totality of the circumstances, Markel American acted in bad faith.

To paraphrase *Markel*, given the minimal coverage of $50,000.00 as compared to the known injuries suffered by Tanya Oliver, coupled with her retention of a lawyer to press her claim and the time that elapsed from receipt of the claim to the tender of the policy limits, there is a genuine issue of fact as to whether, on the basis of the totality of the circumstances, Kinsale acted in bad faith. *Id*.

Regardless of how *Powell* may be interpreted with respect to a predicate evaluation of liability, in this case there is substantial record evidence liability was "clear" from the outset, precluding summary judgment under *Powell*.

The trial court says: "none of the parties who looked into the Lodge's liability ever suggested that the Lodge might bear more than questionable liability." (DE 142, pp 9-10). This is belied by the real time evaluations conducted by both Mr. Landy and Mr. Haggard in early December 2015, each finding "clear liability" based on the same facts known to Kinsale in December 2015 (SOF 94, 96).

In *Powell*: "Prudential evaluated Powell's liability as 80–100%" (584 So.2d at 13), one fact among many creating a jury question. Here, Kinsale's counsel told Ms. Thrift "the likelihood of a favorable outcome is 15% to 20%" (SOF 97), a fact for the jury to consider. As Mr. Haggard cogently described it:

> [T]he first thing you look at is, is there liability. And *liability here was clear, because this is a violation of every standard*, every manager at every bar in the United States of America is going to tell you, if two groups get in a fight or two people get physical or really even a highly verbal altercation, that you have to make sure that they leave. And when we say leave, we don't mean just put them outside in the parking lot to go to round two of the fight, but to have them leave the premises and you watch them leave. So once we saw that in the really easy (sic) police report the discussion with Christopher the whole time was *we got great liability, clear liability in this case*.

\*    \*    \*

- 13 -

> And once we knew that they put these people outside, and
> they started again, and there was no security out there, and
> they didn't stop it and this happened, *we felt there was*
> *clear liability at that point*. And you can go through the
> end of trial and that's how the testimony really comported
> with everything that we learned in the beginning. [e.s.].

Neither Kinsale (DE 124) nor the trial court (DE 142) addressed this record evidence that clear liability was evident in December 2015, clear liability evaluations that preclude summary judgment under the published *Powell* decision.

## CONCLUSION

The summary judgment should be reversed and remanded with instruction to submit the case to a jury.

By s/ James C. Blecke
James C. Blecke
Counsel for Reed
The Haggard Law Firm
330 Alhambra Circle, First Floor
Coral Gables, Florida 33134
(305) 446-5700
jcb@haggardlawfirm.com
Florida Bar No. 136047

- 14 -

<u>CERTIFICATE OF COMPLIANCE</u>

I HEREBY CERTIFY compliance with type-volume limitations. This brief is prepared in Word, Times New Roman 14 point type; and contains 635 lines of text and 4,220 words.

By <u>s/ James C. Blecke</u>
James C. Blecke

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 24, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>s/ James C. Blecke</u>
James C. Blecke
Counsel for Reed
The Haggard Law Firm
330 Alhambra Circle, First Floor
Coral Gables, Florida 33134
(305) 446-5700
jcb@haggardlawfirm.com
Florida Bar No. 136047

<u>SERVICE LIST</u>

KINSALE INSURANCE COMPANY v. PRIDE OF ST. LUCIE, et al.
CASE NO.  22-12675-A

Fred A. Cunningham, Esq.
Matthew T. Christ, Esq.
Domnick Cunningham & Whalen
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Phone: (561) 625-6260
eservice@dcwlaw.com;
fred@dcwlaw.com;
mtc@dcwlaw.com;
tlebel@dcwlaw.com
*Counsel for Defendant/Counter-Plaintiff, Pride of St. Lucie Lodge 1189, Inc.*

Stephen F. Rosenthal, Esq.
Podhurst Orseck, P.A.
One S.E. 3d Avenue Suite 2300
Miami, FL 33131
Phone (305) 358-2800
srosenthal@Podhurst.com
*Counsel for Defendant/Counter-Plaintiff, Pride of St. Lucie Lodge 1189, Inc.*

Sina Bahadoran, Esq.
Aaron Warren, Esq.
Clyde & Co US LLP
1221 Brickell Avenue Suite 1600
Miami, FL 33131
Phone: 305.446.2646
Sina.Bahadoran@clydeco.us
Aaron.Warren@clydeco.us
*Counsel for Plaintiff/Counter-Defendant, Kinsale Insurance Company*

- 16 -