CASE NO. 22-12675

# In the United States Court of Appeals for the Eleventh Circuit

---

PRIDE OF ST. LUCIE LODGE 1189, INC., and
TEAIRA NICOLE REED,

*Defendants/Appellants*,

v.

KINSALE INSURANCE COMPANY,

*Plaintiff/Appellee*.

---

APPELLEE KINSALE INSURANCE COMPANY'S REPLY TO RESPONSES IN OPPOSITION TO MOTION FOR CERTIFICATION OF QUESTION TO FLORIDA SUPREME COURT OR, ALTERNATIVELY, FOR SUPPLEMENTAL BRIEFING ON THE ISSUE

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA, CASE NO. 2:21-CV-14053

---

SINA BAHADORAN
AARON WARREN
CLYDE & CO. US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131

*Counsel for Appellee*

EDWARD G. GUEDES
JEREMY S. ROSNER
WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
2800 Ponce de Leon Blvd.
Suite 1200
Coral Gables, Florida 33134

*Counsel for Appellee*

*PRIDE OF ST. LUCIE LODGE V. KINSALE INS. CO.*
CASE NO. 22-12675

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 27-1(a)(9), Kinsale Insurance Company provides this certificate of interested persons and corporate disclosure statement:

1. Bahadoran, Sina, counsel for Appellee
2. Blecke, James C., counsel for Appellant
3. Christ, Matthew T., counsel for Appellant
4. Clyde & Co US, LLP, law firm for Appellee
5. Cunningham, Fred A., counsel for Appellant
6. Domnick Cunningham & Whalen, law firm for Appellant
7. Guedes, Edward G., counsel for Appellee
8. Haggard, Michael A., counsel for Appellant
9. Kinsale Capital Group, Inc. is a publicly held corporation that owns 100% of Kinsale Insurance Company
10. Kinsale Insurance Company, Appellee
11. Lever, Daniel R., counsel for Appellee
12. Maynard, Hon. Shaniek M., Magistrate Judge
13. Moore, K. Michael, District Judge
14. Podhurst Orseck, P.A., counsel for Appellant
15. Pride of St. Lucie Lodge 1189, Inc., Appellant

ii

16. Reed, Teaira Nicole, Personal Representative of the Estate of Tanya Renee Oliver, Appellant

17. Rosenthal, Stephen F., counsel for Appellant

18. Rosner, Jeremy S., counsel for Appellee

19. The Haggard Law Firm, P.A., law firm for Appellant

20. Warren, Aaron, counsel for Appellee

21. Weiss Serota Helfman Cole & Bierman, P.L., law firm for Appellee

*Edward G. Guedes*
Edward G. Guedes

# REPLY

Pursuant to Federal Rule of Appellate Procedure 27(a)(4), appellee, Kinsale Insurance Company ("Kinsale"), submits this reply to appellants' responses in opposition to Kinsale's motion to certify questions to the Florida Supreme Court.

## ARGUMENT

### I. THE ISSUES OF FACT CITED BY THE LODGE ARE NOT MATERIAL TO THIS APPEAL OR THE ISSUE OF CERTIFICATION TO THE FLORIDA SUPREME COURT.

The focal point of the Lodge's opposition concerns perceived issues of material fact. Lodge Resp. at 2-4. The Lodge misconstrues the applicable law and, therefore, the pertinent dispositive facts in this appeal. As *Powell* explained, an inference of bad faith arises if an insurer delays settlement negotiations which is "willful and without reasonable cause." *Powell v. Prudential Property & Casualty Insurance Co.*, 584 So. 2d 12, 14 (Fla. 3rd DCA 1991). The issue in this case is whether **Kinsale** had knowledge of the Lodge's clearly obvious liability before volunteering the policy limits six days after first learning of the allegations supporting Reed's claim. In every reported *Powell* case based on delayed initiation of settlement, the bad faith plaintiff must come forward with evidence of the insured's knowledge of a clearly liable insured. Otherwise, the claim fails to establish the inference flowing from a "willful and unreasonable" delay.

As this Court previously explained, the "willful and unreasonable delay … must be unreasonable from the perspective of the insured, not unreasonable from the perspective of the third-party claimant." *Valle v. State Farm Mut. Auto. Ins. Co.*, 394 F. App'x 555, 557 (11th Cir. 2010).

1

Here, the Lodge opposes certification based on testimonial evidence from Reed's litigation team: the opinions of attorneys Marlowe, Haggard, and Landy. The Lodge also points to the opinion of Lew Jack, another *after-the-fact* attorney. But the Lodge does not identify any evidence that **Kinsale** knew the Lodge's liability was "clear" before (or at the time) it tendered the policy limit to settle Reed's claim. The record confirms the opposite conclusion. **Kinsale** diligently investigated, making a good faith judgment that the Lodge was not liable for the targeted attack by violent assailants that left the Lodge's property. That opinion was shared by the professional adjusting firm hired to investigate, the Lodge's insurance agent, and (most emphatically) the Lodge, itself. The Lodge points to no evidence that Kinsale unnecessarily delayed initiating settlement or willfully refused to settle. In fact, Kinsale ultimately initiated negotiations—immediately after it obtained through the commencement of litigation the requisite information from Reed setting forth her theory of recovery.[1]

The Lodge's reliance on Reed's attorneys to create an issue of fact regarding whether the Lodge's liability was clear enough to trigger a duty to settle actually highlights the absence of bad faith. This Court made a similar observation in a *Powell* case involving the second prong of the test: "If a genuine issue of material fact exists about whether the evidence showed Aboy's damages to exceed the policy limits, then it would be illogical to simultaneously suggest 'that a judgment in excess of the policy limits is likely' in the eyes of the insurer." *Aboy v. State Farm Mut.*

---

[1] And even so, Kinsale did so because its policy offered a depleting benefit and the policy limit would be promptly exhausted in litigation.

2

*Auto. Ins. Co.*, 394 F. App'x 655, 657 (11th Cir. 2010). The "eyes of Kinsale" are what matters. The bad faith claim in this lawsuit is predicated on Kinsale's alleged "willful and unreasonable" delay initiating settlement. The eyes and opinions of Reed's attorneys are meaningless in this case.

Second, under appellants' assessment of the *Powell* test, summary judgment would be virtually impossible to obtain. In every "delay" case, the bad faith plaintiff would merely submit affidavits of its own lawyers to establish their belief that liability was "clear," regardless of the insurer's knowledge of liability. If that were the rule, it would nullify the plaintiff's burden of proof and would effectively convert exceptional *Powell* cases into strict liability, expanding the scope of a burdensome duty to unworkable lengths. Such a proposal contradicts *Powell*'s pronouncement that the bad faith inference is borne out of the insurer's unjustified refusal to initiate settlement that is "willful and without reasonable cause."

Given that this Court on numerous occasions has affirmed summary judgments in bad faith litigation, the Lodge's proposal cannot be the correct interpretation of Florida law.[2]

---

[2] Kinsale does not dispute that the district court's opinion does not delve into all of the available summary judgment evidence potentially in play. However, as this Court is aware, the district court's summary judgment may be affirmed on any basis supported by the record, even if the district court's written order is purportedly unsatisfying. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1137 (11th Cir. 2019).

## II. REED INCORRECTLY RELIES ON TOTALITY OF THE CIRCUMSTANCES CASES EVEN THOUGH THE THRESHOLD IS CLEAR LIABILITY.

The facts in this case bear repeating: Reed never made a demand or offer to Kinsale to settle the claim against the Lodge within the policy limits. (DE 100.) In fact, Reed never communicated with Kinsale at all before deciding not to settle. (DE 100.) Even so, Reed alleged Kinsale had an affirmative duty to initiate settlement and that Kinsale failed, in good faith, to settle Reed's claim. Reed's bad faith counterclaim alleged: "Kinsale breached its duties by failing to investigate [Reed]'s claim; failing to timely initiate settlement negotiations; and failing to tender its $50,000 sublimit to settle the [Reed] claim … in 2015." (DE 45, ¶ 16).

Under Florida law, "[w]here liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." *Powell*, 584 So. 2d at 14. The liability of Kinsale's insured was not clear, obvious, or free from doubt. This was not a simple car accident. This was a claim involving criminal acts by third parties targeting a victim in a heat-of-the-moment drive-by shooting. As a practical matter, negligent security claims like this are rarely, if ever, clear. *See, e.g.*, *Sapp v. United States*, No. 1:18-cv-176, 2021 WL 2893930, at *5 (N.D. Fla. June 9, 2021) ("In short, the Estate has not met its burden to show foreseeability. Indeed, this can be a difficult burden to meet. … It is an entirely different (and more complex) thing to make predictive judgments about a particular individual. For example … the Eleventh Circuit [has] concluded [a property owner] could not have foreseen or prevented a 'targeted

personal assault' in its store.") (citing *Banosmoreno v. Walgreen Co.*, 299 F. App'x 912, 913 (11th Cir. 2008)).

In the district court, Reed understood the difficult burden of proof to support her bad faith claim. In Reed's response to Kinsale's motion for summary judgment, she argued repeatedly that "clear liability" under *Powell* was central to the claim. (DE 108 at 12, 16, 18.) Now, Reed attempts to reframe the entire issue as a simple dispute involving the totality of the circumstances. Reed even argues: "A 'clear liability' condition precedent is a Kinsale straw man." (Reed Resp. at 5.) Reed is mistaken.

Every case in Reed's response is irrelevant to the Court's inquiry.[3] Reed relies on *Harvey v. GEICO Gen. Ins. Co.*, 259 So. 3d 1 (Fla. 2018). *Harvey*'s discussion of the totality of circumstances test does not provide the guidance to resolve this appeal because in that case, the insurer within days of the incident had assigned complete responsibility to the insured. 259 So. 3d at 4 ("Two days after the accident, … GEICO resolved the liability issue adversely to Harvey."). As such, whether the *Powell* test applied was not at issue. The Florida Supreme Court's entire focus was the insurer's conduct in handling the claimant's request for information subsequent to the threshold determination of the insured's fault. *Harvey*, therefore, does not address the present appeal.

---

[3] The district court correctly considered and rejected this attempt to avoid the *Powell* standard. (DE 142 at 9) ("Reed and the Lodge do not meaningfully address Kinsale's reliance on *Powell's* statement regarding clear liability. Instead, they focus on the broader 'totality of the circumstances' standard governing bad faith claims *once an insurer had an affirmative duty to enter into settlement negotiations*.") (emphasis added).

Reed also cites *Gutierrez v. Yochim*, 23 So. 3d 1221 (Fla. DCA 2d 2010) and *Goheagan v. Am. Vehicles Ins. Co.*, 107 So. 3d 433 (Fla. 4th DCA 2013). In *Yochim,* liability and damages were known and confirmed by the insurer within two months, yet the carrier waited six months before initiating settlement. In *Goheagan*, the insurer immediately learned the insured was intoxicated, the "sole cause of the accident," and completely at fault. Unlike *Yochim* and *Goheagan*, Kinsale never possessed information of the Lodge's clear and obvious fault, nor had anyone expressed that view to Kinsale.

Reed offers *Auto. Mut. Indem. Co. v. Shaw*, 184 So. 852 (Fla. 1938), an 87-year-old decision that "says nothing about clear liability." Reed Resp. at 7. That is not surprising, because *Shaw* was a settlement demand case. If Reed made a demand, or bothered communicating at all, this case might be different. Elsewhere, Reed cited *Snowden v. Lumberman's Mutual Cas. Co.*, 358 F. Supp. 2d 1125, 1127 (N.D. Fla. 2003), which Kinsale previously distinguished because "liability was clear from the outset and known to Lumbermans." (DE 124 at 9.)

Reed's reliance on *Self v. Allstate Ins. Co.*, 345 F. Supp. 191 (M.D. Fla. 1972), is similarly misplaced. Reed Resp. at 6. In *Self*, the claimant made multiple settlement overtures, including a demand within policy limits. The insurer evaluated the case within the range of settlement offers, but "arbitrarily refused to offer a single dollar." *Id.* at 193. Here, there was no communication, no settlement overtures, and no settlement demands. Additionally, Kinsale voluntarily tendered its policy limit, but just "too late" according to Reed.

Interestingly, Reed cites *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla. 1980), as "the standard to be applied in Florida bad faith litigation." Reed Resp. at 9.[4] However, in *Boston Old Colony*, the Florida Supreme Court described the insurer's duty to act in good faith as follows: "The insurer must investigate the facts, *give fair consideration to a settlement offer that is not unreasonable under the facts*, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id.* (emphasis added). Kinsale promptly investigated, gathered facts and details about the incident, and exhausted several sources of information available it. The evidence Kinsale obtained before Reed's lawsuit did not establish clear liability. Kinsale accordingly discharged the first part of the *Boston Old Colony* decision.

What is missing is the second component, because *there was no settlement offer made* that Kinsale could have "fairly considered." Other than sending a generic letter to the insured indicating it might have liability under some undisclosed theory, plaintiff's counsel was wholly uncommunicative. This is where *Powell* comes into play. *Powell* explains—and the Florida Supreme Court's adoption of the standard almost three decades later in *Harvey* affirms—that even if (as in this case) there was no settlement offer made and no request for information was ignored, an insurer occasionally has a duty to *initiate* settlement negotiations, but only where two conditions are met: (1) liability is clear, and (2) injuries are so serious that a judgment in excess of the policy is likely. *Powell*, 584 So. 2d at 514.

---

[4] The Lodge's response ignores *Boston Old Colony*.

Ultimately, the district court did evaluate this case under its unique circumstances, as it expressly stated in the summary judgment order. The circumstances included a pre-suit claim involving an evasive claimant that never communicated, made no settlement overtures, requested no information, and never demanded settlement. The circumstances included a good faith investigation by a team of insurance professionals that revealed no evidence of a clearly liable insured. Finally, six days after Kinsale's first knowledge through the lawsuit of a theory supporting Reed's claim, it tendered the policy limits, even though liability remained unclear at that time. *See* n.1, *supra*.

### III. FLORIDA STATUTE SECTION 624.155(4)(A) DOES NOT ELIMINATE THE NEED FOR CERTIFICATION ON THE MEANING OF "CLEAR" LIABILITY UNDER *POWELL*.

The Lodge speculates that a "*Powell* bad faith case is highly *unlikely* to recur due to the new legislative changes to Florida bad faith law." Lodge. Resp. at 5. The Lodge argues the new law "now immunizes insurance companies from bad faith liability," but the Lodge is wrong.

First, section 624.155(4)(a) does not eliminate the "affirmative duty to initiate settlement negotiations." Nor does the new law require settlement offers as a precondition to imposing bad faith liability. Accordingly, the principal holding in *Powell* is unaffected by the enactment of section 624.155(4)(a). Under Florida law, insurers continue to have a duty to affirmatively initiate settlement negotiations, even in the absence of a demand, but only if (1) liability is "clear," and (2) damages are so serious that an excess judgment is likely.

8

Further, section 624.155(4)(b) provides that if a liability insurer does not tender within 90 days, the existence of the immunity is inadmissible in any bad faith action. Because the immunity disappears, it follows that *Powell* bad faith claims will continue to persist in the insurance industry.

Kinsale agrees certain *Powell* claims will decrease by virtue of the new law. But those claims will consist almost exclusively of auto accident claims involving ordinary negligence. In those claims, the "clear" liability question is rarely in doubt.[5] But this case was never about a simple auto accident involving ordinary negligence. This case is about a complicated pre-suit claim involving a targeted criminal attack against a specific victim, after the victim was ejected for fighting, the shooter returned to the property, and the victim was attempting to drive away from the property. This case is about a claim that Kinsale and a team of insurance professionals investigated, which revealed no obvious liability and numerous affirmative defenses. This case is about a claim that was so difficult it required a specialist, and even then it resulted in a jury verdict finding only 70% liability.

*Powell* is not moribund because section 624.155(4)(a) was enacted. Liability claims of all stripes evolve over time. What starts as a claim of unclear liability and multiple affirmative defenses could develop into crystal clear fault after weeks, months, or years of litigation. Unexpected witness testimony, newly discovered evidence, dispositive motion practice, and expert witness opinions could impact

---

[5] *But see Welford v. Liberty Mut. Ins. Co.*, 190 F. Supp. 3d 1085, 1087 (N.D. Fla. 2016) (asserting a *Powell* bad faith claim alleging driver's liability was "clear," even though the driver never struck the claimant).

9

liability at any given stage. As *Powell* instructs, when an insurer learns that (1) liability is absolutely clear, and (2) damages are so serious that an excess judgment is likely, Florida law imposes a duty to initiate settlement promptly. The 90-day grace period afforded by the legislation will have no effect in those circumstances.[6]

## CONCLUSION

To read the responses, one might be tempted to conclude the panel's own repeated inquiries into whether a question or questions should be certified to the Florida Supreme Court were self-evidently a waste of time. That is not the case. There is virtually no Florida precedent that provides guidance as to how the *Powell* test is to be applied in a case with these facts, where the insurer did not early on reach its own conclusion about its insured's liability, and where there was virtually no substantive communication from plaintiff's counsel. The Court, respectfully, should avail itself of the opportunity to obtain guidance from the Florida Supreme Court on this uniquely state-law issue.

---

[6] *See e.g.*, *Shin Crest PTE, Ltd. v. AIU Ins. Co.*, 605 F. Supp. 2d 1234, 1237 (M.D. Fla. 2009) (asserting a *Powell* bad faith claim because the duty to settle allegedly arose at a specific mediation 2.5 years after a lawsuit was filed)

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>
SINA BAHADORAN, ESQ.<br>
Florida Bar No. 523364<br>
AARON WARREN, ESQ.<br>
Florida Bar No. 96162<br>
CLYDE & CO US LLP<br>
1221 Brickell Avenue<br>
Suite 1600<br>
Miami, Florida 33131<br>
T. (305) 446-2646<br>
Sina.bahadoran@clydeco.us<br>
Aaron.warren@clydeco.us
</td><td>
EDWARD G. GUEDES, ESQ.<br>
Florida Bar No. 768103<br>
JEREMY S. ROSNER, ESQ.<br>
Florida Bar No. 1018158<br>
WEISS SEROTA HELFMAN<br>
COLE & BIERMAN, P.L.<br>
2800 Ponce de Leon Blvd.<br>
Suite 1200<br>
Coral Gables, FL 33134<br>
T. (305) 854-0800<br>
eguedes@wsh-law.com<br>
jrosner@wsh-law.com<br>
szavala@wsh-law.com<br>
<br>
*Counsel for Appellee*<br>
<br>
By:   /s/ *Edward G. Guedes*<br>
        Edward G. Guedes
</td></tr>
</table>

## **CERTIFICATE OF COMPLIANCE**

I certify that, pursuant to Fed. R. App. P. 32(g)(1), this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 2,652 words, excluding the exempt parts.  Further, I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

*/s/ Edward G. Guedes*
Edward G. Guedes
Florida Bar No. 768103

11

## **CERTIFICATE OF SERVICE**

I certify the foregoing motion was filed electronically on January 2, 2024 through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served on the same day.

*/s/ Edward G. Guedes*
Edward G. Guedes
Florida Bar No. 768103