UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

KINSALE INSURANCE COMPANY,

Plaintiff-Counter Defendant, Appellee

v.

PRIDE OF ST. LUCIE LODGE 1189, INC. and TEAIRA NICOLE REED,

Defendants-Counter Plaintiffs, Appellants

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:21-cv-14053-KMM

**APPELLEE KINSALE INSURANCE COMPANY'S
PETITION FOR PANEL AND EN BANC REHEARING**

Sina Bahadoran          Edward Guedes
Aaron Warren            Jeremy Rosner

CLYDE & CO US, LLP       WEISS SEROTA
1221 Brickell Avenue     2800 Ponce de Leon Boulevard
Suite 1600               Suite 1200
Miami, Florida 33131     Coral Gables, Florida 33134
305.446.2646             305.854.0800

Attorneys for Appellee and Petitioner Kinsale Insurance Company

*Kinsale Insurance Co. v. Pride of St. Lucie Lodge 1189, Inc., et al.*
Appeal No. 22-12675-HH

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and accompanying circuit rules, Kinsale

Insurance Company certifies and discloses:

Bahadoran, Sina, counsel for Appellee

Blecke, James, counsel for an Appellant

Christ, Matthew, counsel for an Appellant

Clyde & Co US, LLP, law firm for Appellee

Cunningham, Fred, counsel for an Appellant

Domnick Cunningham & Whalen, law firm for an Appellant

Guedes, Edward, counsel for Appellee

Haggard, Michael, counsel for an Appellant

Kinsale Capital Group, Inc. ("KNSL") is a publicly held corporation that owns 100% of Kinsale Insurance Company

Kinsale Insurance Company, Appellee

Lever, Daniel, counsel for Appellee

Maynard, Hon. Shaniek M., Magistrate Judge

Moore, Hon. K. Michael, District Judge

Podhurst Orseck, P.A., law firm for Appellant

Pride of St. Lucie Lodge 1189, Inc. (the "Lodge"), Appellant

Reed, Teaira Nicole, Personal Representative of the Estate of Tanya Renee Oliver (the "Estate"), an Appellant

Rosenthal, Stephen, counsel for an Appellant

Rosner, Jeremy, counsel for Appellee

The Haggard Law Firm, P.A., law firm for an Appellant

Warren, Aaron, counsel for Appellee

Weiss Serota Helfman Cole Bierman, P.L., law firm for Appellee

**<u>STATEMENT REGARDING REHEARING EN BANC</u>**

We express a belief, based on reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States or precedents of this Circuit, and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court: *American Builders Insurance Co. v. Southern-Owners Insurance Co.*, 71 F.4th 847 (11th Cir. 2023), *Ilias v. USAA General Indemnity Co.*, 61 F.4th 1338 (11th Cir. 2023), *Pelaez v. Government Employees Insurance Co.*, 13 F.4th 1243 (11th Cir. 2021), *Welford v. Liberty Insurance Co.*, 713 F. Appx. 969 (11th Cir. 2017), *Harris v. GEICO General Insurance Co.*, 619 F. Appx. 896 (11th Cir. 2015), *Aboy v. State Farm Mutual Automobile Insurance Co.*, 394 F. Appx. 655 (11th Cir. 2010), *Valle v. State Farm Mutual Automobile Insurance Co.*, 394 F. Appx. 555 (11th Cir. 2010), and *Johnson v. GEICO General Insurance Co.*, 318 F. Appx. 847 (11th Cir. 2009).

We further express a belief, based on reasoned and studied professional judgment, that this appeal involves questions of exceptional importance to Florida tort and insurance law. Holding insurers liable for "bad faith" failure to settle—where there is no demand—will incentivize claimants and their counsel to never make demands, never articulate a theory of liability, and instead sit back and wait. If that becomes the law, Florida residents will be harmed because the cost of

general liability insurance in the state will continue to soar. If there is any doubt, in 2023 the Governor of Florida signed sweeping tort reform into law because "Florida has been considered a judicial hellhole for far too long…."

/s/SINA BAHADORAN

and

/s/EDWARD GUEDES

Attorneys of record for Kinsale Insurance Company

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................C1

STATEMENT REGARDING REHEARING EN BANC .........................................i

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF ISSUES MERITING EN BANC CONSIDERATION ..............1

COURSE OF PROCEEDINGS AND DIPOSITION OF CASE .............................2

STATEMENT OF FACTS NECESSARY TO ARGUMENT OF ISSUES .............3

ARGUMENT AND AUTHORITIES.......................................................................4

I.     THE MAJORITY MISAPPREHENDED THE FACTUAL TIMELINE, WARRANTING PANEL REHEARING ........................4

II.    BECAUSE THE MAJORITY'S DECISION CONTRADICTS FLORIDA AND ELEVENTH CIRCUIT PRECEDENT, REHEARING OR REHEARING EN BANC IS WARRANTED .......6

    A.    The Duty to Initiate Arises Only if Liability is "Clear" ............6

    B.    Liability Was Never Clear or Admitted in 2015-2016 ...............7

    C.    The Majority Collapsed *Powell*'s Two-Prong Test Into a Sliding-Scale Standard Never Recognized Under Florida Law ....................................................................9

    D.    The Panel Treated the Question of Duty as a Fact Issue, Contrary to Florida and Eleventh Circuit Law .........................10

    E.    The "Totality of the Circumstances" Test Does Not Override *Powell's* Threshold ....................................................11

    F.    The Majority's Novel Rule Upends the Norm..........................13

III.    THE PANEL (OR THE COURT EN BANC) SHOULD GRANT REHEARING AND CERTIFY ISSUES TO THE FLORIDA SUPREME COURT ...........................................................................13

CONCLUSION .....................................................................................17

CERTIFICATE OF SERVICE ..............................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aboy v. State Farm Mutual Auto. Ins. Co.,*
    394 F. Appx. 655 (11th Cir. 2010) .......................................................1, 4, 8, 10

*Allen v. Carman's Est.*,
    486 F.2d 490 (5th Cir. 1973) ............................................................ 13

*Aretz v. United States*,
    660 F.2d 531 (5th Cir. 1981) (en banc) ...........................................14

*Berges v. Infinity*,
    896 So. 2d 655 (Fla. 2004) .......................................................7, 9, 11

*Black v. United States*,
    2002 WL 219866 (11th Cir. 2002) ...................................................16

*Bohn v. Vermont Mut.*,
    922 F. Supp. 2d 138 (D. Mass. 2013)...............................................16

*Douglas Asphalt v. QORE*,
    657 F.3d 1146 (11th Cir. 2011) ........................................................10

*Fowler v. State Farm*,
    454 P.2d 76 (Mont. 1969)..................................................................16

*Fulton v. Woodford*,
    545 P.2d 979 (Ariz. Ct. App. 1976)..................................................15

*Goheagan v. Am. Vehicle*,
    107 So. 3d 433 (Fla. 4th DCA 2012)...............................................6, 7

*Green v. Am. Tobacco*,
    304 F.2d 70 (5th Cir. 1962) ..............................................................14

*Grigsby & Assocs. v. M Sec. Inv.*,
    635 F. Appx. 728 (11th Cir. 2015) ...................................................16

*Gutierrez v. Yochim*,
    23 So. 3d 1221 (Fla. 2d DCA 2009)....................................................6

v

*Harris v. GEICO*,
619 F. Appx. 896 (11th Cir. 2015) ....................................................................10

*Hartford v. Mathis*,
511 So. 2d 601 (Fla. 4th DCA 1987)...............................................................6, 7

*Harvey v. GEICO*,
259 So. 3d 1 (Fla. 2018) ...................................................................6, 7, 11, 16

*Ilias v. USAA Gen. Indem.* ,
61 F.4th 1338 (11th Cir. 2023) ....................................................................1, 12

*Johnson v. GEICO*,
318 F. Appx. 850 (11th Cir. 2009) ..................................................................10

*Katherine Martinez v. GEICO Cas. Ins. Co.*,
No. 24-10641 (11th Cir. argued May 1, 2025)................................................15

*Kavanaugh v. Interstate Fire*,
342 N.E.2d 116 (Ill. App. Ct. 1975) ................................................................16

*Sun Microsystems of Ca., Inc. v. Engineering and Mfg. Systems,
CA*, 682 So. 2d 219, 220 (Fla. 3d DCA 1996)..................................................13

*NBIS Constr. & Transp. v. Liebherr-Am., Inc.*,
93 F.4th 1304 (11th Cir. 2024) ........................................................................16

*Netzley v. Nationwide Mut. Ins. Co.*,
296 N.E. 2d 550 (Ohio App. Ct. 1971)...............................................................9

*Rova Farms Resort v. Investors Ins.*,
323 A.2d 495 (N.J. 1973) ............................................................................14, 15

*SE Prop. Hldgs, LLC v. Welch*,
65 F.4th 1335 (11th Cir. 2023) ...........................................................................9

*Seward v. State Farm*,
392 F.2d 723 (5th Cir. 1968) ..............................................................................9

*Shevin v. Exxon Corp.*,
526 F.2d 266 (5th Cir. 1976) ......................................................................14, 15

*Shin Crest PTE v. AIU*,
  605 F. Supp. 2d 1234 (M.D. Fla. 2009)............................................................11

*Steedly v. London & Lancashire*,
  416 F.2d 259 (6th Cir. 1969) ............................................................16

*Tobin v. Michigan Mut. Ins.*,
  398 F.3d 1267 (11th Cir. 2005) ............................................................15

*Valle v. State Farm Mut. Auto. Ins.*,
  394 F. Appx. 557 (11th Cir. 2010) .................................................... 1, 5, 6, 8, 14

*Wayne Colello v. GEICO Gen. Ins. Co.*,
  No. 23-13689 (11th Cir. Argued Apr. 29, 2025)............................................15

*Welford v. Liberty Mutual Insurance Co.*,
  713 F. Appx. 969 (11th Cir. 2017) ............................................................1, 8, 10

## Statutes

Florida Statutes §§ 768.075(1), 768.075(4), and 768.36...........................................7

## STATEMENT OF ISSUES MERITING EN BANC CONSIDERATION

Rehearing en banc is warranted because the panel decided a significant question of Florida law, *Powell v. Prudential*, 584 So. 2d 12 (Fla. 3d DCA 1991), and in doing so, redefined the narrow circumstances under which an insurer's duty to affirmatively initiate settlement may arise. The decision alters a core doctrine of Florida's bad faith jurisprudence.

This case turns on *Powell's* exception to the general rule that no duty to settle arises without a demand. Powell permits an "inference" of bad faith—but only if two preconditions exist: (1) clear liability, and (2) injuries so severe that an excess judgment is likely. Only then is an insurer obligated to initiate negotiations, and only then can delay support a finding of bad faith as "willful and without reasonable cause."

The panel departed from this standard in five fundamental ways:

1.     It diluted *Powell's* "clear liability" requirement, holding that bad faith may arise even if liability is merely "arguable" or "potential." That contradicts Florida and Eleventh Circuit precedent, which require undisputed or admitted fault. By redefining "clear," the panel invites bad faith liability in nearly every serious injury case. Worse, it relied on out-of-state demand cases.

2.     It treated "clear liability" as a jury issue rather than a legal guardrail. Under *Powell*, clear liability is a precondition—not a fact question resolved by

hindsight speculation. This reasoning untethers the duty from what the insurer knew during claims handling.

3.      It imposed liability based on facts learned in some instances years after Kinsale tendered its limits. Florida law is clear: bad faith is assessed based on the insurer's knowledge during the claims process, not in litigation.

4.      It misapplied the "totality of the circumstances" standard, using it to create a duty to settle. Florida law applies that test only after a duty exists to determine breach.

5.      It ignored the conduct of the claimant and insured, including the Estate's failure to present a liability theory, the Lodge's denial of fault, and Kinsale's documented defenses.

If allowed to stand, the panel's opinion transforms *Powell's* narrow exception into a sweeping rule.

## COURSE OF PROCEEDINGS AND DISPOSITION OF CASE

Kinsale brought this action in the Southern District of Florida, seeking a declaratory judgment that its $50,000 sublimit applied. The Lodge and the Estate counterclaimed for bad faith, alleging Kinsale failed to initiate settlement. The district court granted summary judgment to Kinsale, holding no reasonable jury could find "clear liability" based on the information available at the time. The Eleventh Circuit reversed. Judge Lagoa dissented. This petition seeks rehearing to

correct the panel's departure from settled law.

## STATEMENT OF FACTS NECESSARY TO ARGUMENT OF ISSUES

In March 2015, patrons were ejected from the Lodge following a fight. The assailants left the Lodge premises and came back, engaging in a drive-by shooting that left Tanya Oliver critically injured in the parking lot. Oliver died a year later.

Kinsale, the Lodge's insurer, received late notice in November 2015, nine months after the incident. The Estate's attorney requested insurance information, but never alleged liability. Kinsale investigated the claim, found no basis for liability, and documented viable defenses. The Lodge denied fault, and the Estate's counsel later admitted the case required a "specialist" attorney in premises liability.

In August 2016—six days after receiving the Estate's lawsuit, Kinsale tendered its $50,000 sublimit unconditionally. The Estate rejected it. At trial, the jury apportioned only 70% fault to the Lodge, entering a $3.3 million judgment. The Estate sued Kinsale for bad faith, predicated solely on alleged "delayed" pre-suit negotiations.

## ARGUMENT AND AUTHORITIES

The majority transforms *Powell* from a narrow exception into a sweeping rule. For the first time, it applies *Powell* in a contested negligent security case, not based on what Kinsale knew during its investigation, but on what a jury might infer years later through litigation. As the dissent notes, no Florida or Eleventh Circuit

3

decision has imposed bad faith liability where the insurer denied fault, raised

viable defenses, and the claimant never articulated a liability theory. (Dissent Op.

15.) Rehearing is warranted to correct this doctrinal shift—or at minimum, to

certify the issue to the Florida Supreme Court before stretching and expanding

*Powell* into unsettled territory.

## I. THE MAJORITY MISAPPREHENDED THE FACTUAL TIMELINE, WARRANTING PANEL REHEARING

Kinsale's conduct is evaluated solely on information it knew between

November 2015 and August 2016 (2015-2016). The panel reversed, however, based

on "specific facts" revealed years later. (Op. 19-20, ¶¶1-3.)

1. **Lodge "meetings."** Without citation, the majority noted meetings where

security concerns were raised. (Op. 19, ¶1.) No such meetings were disclosed in 2015-

2016. All information submitted in 2015-2016 reflected no security issues: the Lodge

denied liability, its bartender reported no prior incidents, and its security team

confirmed no problems. (DE 92 at 33-35, 38-39, 42.) An insurer cannot be faulted for

failing to act on information not shared by the insured or claimant. *See Aboy*, 394 F.

Appx. at 657 ("factual impossibility" of discovering undisclosed "beforehand"

information).

2. **"Dark and unmonitored" parking lot.** The majority focused on the

inadequacy of the lighting (Op. 19, ¶1), but that was first mentioned in the August

2016 complaint and the Estate's counsel conceded lighting was irrelevant. (DE 91 at

108:4-10.) Kinsale investigated lighting in December 2015 and it was adequate. (DE 92 at 35.)

3. **Shooter's prior threat.** The majority cited 2019 trial testimony from a guard who testified the shooter was "liable to shoot." (DE 107-3 at 3.) But in 2015, that same guard refused to cooperate and directed the investigator to the police report. (DE 92 at 34-35.) The guard told police he did not know the shooter. (DE 90 at 45.)

4. **Security guards' alleged inaction.** The majority speculated guards witnessed or failed to stop a second fight. (Op. 20, ¶3.) That inference finds no support in the 2015-2016 record. The guards removed the patrons, separated them through opposite exits, instructed them to leave, and reentered once the area appeared secure. They only learned of the second altercation afterward. (DE 92 at 34-35, 38-39.)

5. **Expert witness opinions.** The majority's reliance on expert opinions violates the rule because the experts' opinions were based on information developed in litigation after the 2015-2016 period. Florida law prohibits bad faith through hindsight. *Valle*, 394 F. Appx. at 557 (rejecting "post-hoc" arguments blaming insurer based on hindsight and speculation).

## II. BECAUSE THE MAJORITY'S DECISION CONTRADICTS FLORIDA AND ELEVENTH CIRCUIT PRECEDENT, REHEARING OR REHEARING EN BANC IS WARRANTED.

The majority departed from the *Powell* framework that has governed Florida

bad faith law for more than three decades. (Op. 12-15.) That framework, adopted by the Florida Supreme Court and applied consistently by this Court, imposes a narrow duty to negotiate in the absence of a demand—only when two conditions exist: (1) insurer's knowledge of a clearly liable insured, and (2) injuries so serious an excess judgment is likely. *Powell*, 584 So. 2d at 14; *Valle*, 394 F. Appx. at 557 (*Powell* applies in "limited circumstances").

Because the Estate never made a demand, its bad faith claim depends on whether Kinsale had a pre-suit duty to initiate settlement—based on knowledge of clear liability and likely excess exposure. The majority cited no evidence in 2015–2016. Instead, it relied on post-suit facts and adopts a jury-driven standard unrelated to Kinsale's knowledge at the time. That shift departs from every prior *Powell* case, and warrants correction.

### A.   The Duty to Initiate Arises Only if Liability is "Clear"

*Powell's* threshold requirement of "clear" liability has a precise and consistent meaning in Florida law: undisputed, admitted, or so obvious no reasonable insurer could deny it. *Harvey v. GEICO*, 259 So. 3d 1, 4, 8 (Fla. 2018) (insurer admitted insured was entirely (100%) liable); *Goheagan v. Am. Vehicle*, 107 So. 3d 433, 438 (Fla. 4th DCA 2012) (same); *Gutierrez v. Yochim*, 23 So. 3d 1221, 1224 (Fla. 2d DCA 2009) (same); *Hartford v. Mathis*, 511 So. 2d 601, 602 (Fla. 4th DCA 1987) (same). It is a legal precondition.

Informal overtures to settle can trigger a duty in cases of "absolute or nearly absolute liability." *Mathis*, 511 So. 2d at 602. In *Berges* and *Harvey* the Florida Supreme Court equated "clear liability" with "100% at fault for the accident." *Berges*, 896 So. 2d at 681; *Harvey*, 259 So. 3d at 8.

No Florida court has imposed a duty on an insurer to initiate settlement where liability was "unclear." Every case involved uncontested and admitted fault. *Harvey*, 259 So. 3d at 5; *Goheagan*, 107 So. 3d at 435.

### B. Liability Was Never Clear or Admitted in 2015-2016

The record is undisputed: Kinsale never identified the Lodge as liable let alone clearly liable, the Lodge denied liability, and the Estate never bothered to articulate a theory of negligence before filing suit. (DE 99, 107 ¶¶63-64.) Kinsale evaluated "no liability," relying on information during its 2015-2016 investigation.

Even if ultimately unsuccessful, the Lodge had a viable trespasser defense because Oliver was ejected for fighting and failed to leave, *see* 41 Fla. Jur. 2d Premises Liability § 14, and potential immunity under Florida Statutes §§ 768.075(1), 768.075(4), and 768.36. Additionally, the shooters left the premises entirely only to return to target the victim; an intervening, superseding event that reasonably supported a "no liability" position. None of these defenses were refuted at the time, and the Estate provided no contrary facts or argument. Under *Powell*, that ends the inquiry.

Yet the majority based its analysis on facts developed years later during litigation. That is precisely the type of "post hoc" reconstruction this Court has repeatedly rejected. *See Aboy*, 394 F. Appx. at 657 (11th Cir. 2010) ("impossible" to know beforehand information never disclosed); *Valle*, 394 F. Appx. at 557 (no liability absent evidence insurer knew of some special sense of urgency); *Harris v. GEICO*, 619 F. Appx. 896, 901 (11th Cir. 2015) (no duty to offer money given claimant's failure to prove liability). An insurer cannot be held liable for failing to act much less failing to settle on information it never had.

### C. The Majority Collapsed *Powell*'s Two-Prong Test Into a Sliding-Scale Standard Never Recognized Under Florida Law

*Powell* is a conjunctive test: to trigger the duty to initiate, Appellants had to show Kinsale knew in 2015–2016 that its insured was clearly liable and an excess judgment was likely. *See Welford*, 713 F. Appx. at 973 (no duty where liability was not clear); *Aboy*, 394 F. Appx. at 657 (no duty without knowledge of severe damages). The majority discarded that standard. Instead of determining whether liability was clear, it created a new rule allowing a jury to infer a duty whenever an excess judgment was "a likely possibility." (Op. 15.) According to the majority, the question is not whether liability was "100% guaranteed," but whether an excess exposure was possible—an entirely new formulation of a state law insurance duty unsupported by any reasoned explanation.

The Court's obligation, in diversity, is to predict how the state's highest

court would decide the issue. *SE Prop. Hldgs, LLC v. Welch*, 65 F.4th 1335, 1342 (11th Cir. 2023). The majority reframed the issue as whether a "judgment in excess of policy limits is likely" but never explained why the Florida Supreme Court would agree. In *Berges*, the Florida Supreme Court indicated three factors were important: "clear liability," substantial damages, and policy limits. *Berges* undermines the panel's conclusion, and *Berges* further equated "clear liability" as "100% at fault."

The majority's interpretation was based on a statement from a decades-old treatise, *Appleman* § 4711, that this Court criticized for "loose generalizations." *Seward v. State Farm*, 392 F.2d 723, 726 n.5 (5th Cir. 1968). The majority seized on a statement under the heading of "Bad Faith" that cites a decision under Ohio law: *Netzley v. Nationwide Mut.*, 296 N.E. 2d 550 (Ohio App. Ct. 1971). But *Netzley* did not address "clear" liability and the duty to initiate settlement in a "no demand" case. *Netzley* considered an insurer's failure to negotiate settlement *in a settlement demand case that was made at or near policy limits*. The general duties of good faith that apply in a settlement demand case are inapposite to the duties that apply in a *Powell* case, under Florida law. *Appleman* provides no hint as to the meaning of "clear" liability in the context of this case, nor should a treatise be expanding Florida law.

By transforming "clear" liability from admitted, undisputed fault into

"possible" excess exposure, the majority gutted *Powell*. The new standard is so low that the exception swallowed the rule. Any accident case with more than negligible injuries can have potential liability and a "possibility" of excess exposure.

By treating *Powell* as a flexible sliding-scale, the panel created a test that no Florida court has ever endorsed. The panel's dramatic extension of *Powell* based on "loose generalizations" in secondary sources, foreign case law, and outdated treatises is an unwarranted expansion of "state court tort doctrine in novel directions" that federal courts are particularly cautious to avoid. *See Douglas Asphalt v. QORE*, 657 F.3d 1146, 1154 (11th Cir. 2011) (not the "function of federal courts" to enlarge state tort doctrine "absent state authority suggesting propriety of doing so").

### D. The Panel Treated the Question of Duty as a Fact Issue, Contrary to Florida and Eleventh Circuit Law

The duty to initiate arises only if the two *Powell* elements exist at the time of alleged delay. *Welford*, 713 F. Appx. at 973 (no duty because insurer lacked knowledge of clear liability); *Aboy*, 394 F. Appx. at 657 (no duty because insurer lacked knowledge of damages); *Johnson v. GEICO*, 318 F. Appx. 850, 851 (11th Cir. 2009) (no duty because insurer lacked knowledge linking injuries to liability); *Harris*, 619 F. Appx. at 901 (no duty based on information supplied to insurer).

Yet the panel remanded for a jury to decide. That approach ignored the

authorities above and invites juries to create duties based on litigation hindsight. *Shin Crest PTE v. AIU*, 605 F. Supp. 2d 1234 (M.D. Fla. 2009), illustrates the danger. There, despite catastrophic injuries and internal valuations of multi-million dollar exposure, the court granted summary judgment to the insurer because liability remained contested. *Id.* at 1241-42. The court held that severe injuries are not determinative when liability is in dispute. So too here.

Kinsale never admitted the Lodge's fault because there was no evidence of liability, or even an articulation of fault from the Estate. Its contemporaneous evaluation found "no liability," the insured denied fault, and the Estate never presented evidence, proof, or allegations for Kinsale to consider. Under *Powell*, that ends the analysis. No duty arose; thus, there can be no breach.

### E. The "Totality of the Circumstances" Test Does Not Override *Powell*'s Threshold

Florida's "totality of the circumstances" standard governs whether an insurer breached a duty—not whether that duty existed in the first place. *Harvey*, 259 So. 3d at 7; *Berges*, 896 So. 2d at 680.

The panel inverted that sequence. It used the "totality" of post hoc facts to infer a duty to settle—despite the absence of clear liability. But *Powell* is not a balancing test. It is a binary threshold. Without clear liability, the duty to initiate never arises. And without a duty to initiate, there is no breach.

The majority cites *Harvey*, *Powell*, and *Snowden*. (Op. 11, 26.) In those

cases the duty to initiate was evident at the outset and the insurer admitted the

insured's clear liability. It was therefore appropriate to evaluate the totality to

assess breach. Here, in contrast, no duty to settle was triggered and Kinsale never

admitted liability. The Estate never offered to settle or even bother to communicate

before it decided it would not settle. Kinsale is only liable for failing to settle if an

affirmative duty arose. An affirmative duty is only possible if two conditions

existed: clear liability and serious injuries such that an excess judgment was likely.

Kinsale investigated and ultimately evaluated "no liability" against the Lodge—a

decision everyone agreed with at the time. Before August 2016, during the alleged

delay period, neither *Powell* element existed. No amount of "circumstances" can

change those facts.

The panel's invocation of the "ticking financial time bomb" metaphor

highlights the error. (Op. 26.) That metaphor only applies after liability and

damages are known, and admitted, and the insurer engages in unjustified delay.

Those facts do not exist here. Kinsale investigated, identified plausible defenses,

faced no demand. The duty never arose. *Cf. Ilias*, 61 F.4th at 1345 (moment when

insurer "arguably should have treated" claim as "ticking" bomb: after knowledge

of clear liability and damages).[1]

---

[1] Auto negligence claims are distinguishable from the liability claim here based on
evidentiary presumptions favoring claimants. In this case, the presumption cuts the
other way—further supporting Kinsale's reasonable conclusion of "no liability."

### F.    The Majority's Novel Rule Upends the Norm

By focusing on damages and *arguable* fault, the majority transformed *Powell*'s narrow exception into a sweeping default rule. That approach effectively imposes strict liability in high-damages cases regardless of whether liability is disputed, undefined, or even asserted. It strips insurers of their right and duty to investigate, evaluate, and defend, and invites bad-faith exposure based on hindsight.

Because of the majority's approach, claimants with high-value injuries and low-limit policies will withhold offers, waiting to argue that any insurer response came "too late." This will promote (even more) gamesmanship and prolonged litigation, as well as severely impacting the cost and availability of insurance in Florida. It will discourage and deteriorate settlement, which is contrary to the "public policy of the State of Florida … [that] favors settlement." *Sun Microsystems of Ca., Inc. v. Engineering and Mfg. Systems, CA*, 682 So. 2d 219, 220 (Fla. 3d DCA 1996).

### III.  THE PANEL (OR THE COURT EN BANC) SHOULD GRANT REHEARING AND CERTIFY ISSUES TO THE FLORIDA SUPREME COURT.

This Court has long recognized the value of certification to the Florida Supreme Court, including after granting rehearing or rehearing en banc. *See Allen v. Carman's Est.*, 486 F.2d 490, 491 n.1 (5th Cir. 1973); *Aretz v. United States*,

660 F.2d 531, 532 (5th Cir. 1981) (en banc). Certification is particularly warranted where, as here, no Florida decision is "precisely on point" and the issue is both important and disputed. *See Green v. Am. Tobacco*, 304 F.2d 70, 77 (5th Cir. 1962), *certified question answered*, 154 So. 2d 169 (Fla. 1963). Over a strong dissent, the majority expanded the *Powell* doctrine, widening the "limited circumstances" under which it applies and lowering the threshold for bad-faith claims. *See Valle*, 394 F. Appx. at 557.

Relying predominantly on *Rova Farms Resort v. Investors Ins.*, 323 A.2d 495 (N.J. 1973), the majority decreed that "clear" means "obvious" and an insurer has a duty to initiate settlement communications where a judgment in excess of the policy limits is "a likely possibility." (Op. 15.) Despite no Florida cases adopting that language, the majority declined to certify questions, because "bad faith liability is sufficiently well-settled"; "Florida's appellate courts have told us that 'clear' means 'obvious'"; and a jury "could reasonably find that the [insured]'s liability was obvious." *Id.* at 27 n.4 (quoting *Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir. 1976)).

Despite acknowledging that the Florida Supreme Court has not addressed *Powell's* scope, the panel declined to certify any questions, reasoning that "bad faith liability is sufficiently well-settled" and citing Florida appellate cases using the word "obvious." *Id.* at 27 n.4 (quoting *Fla. ex rel. Shevin v. Exxon Corp.*, 526

F.2d 266, 275 (5th Cir. 1976)). But as the dissent notes, the Florida Supreme Court has not spoken on *Powell* or the subsequent decisions that interpreted it. (Dissenting Op. 3.)

Intermediate appellate decisions cannot substitute for Florida Supreme Court guidance when federal interpretation could carry broad consequences. *See Tobin v. Michigan Mut. Ins.*, 398 F.3d 1267, 1274 (11th Cir. 2005) (certifying question despite existing state court authority). The panel recognized the issue's widespread impact and certified it—even though no "persuasive indication" existed that Florida's high court would disagree with the intermediate ruling. *Id.* at 1274.

Indeed, although the majority decision is recent, it has already featured prominently in at least two other oral arguments.[2]

Here, the majority relies on precedents where the insurer quickly recognized its insured was liable. These decisions do not provide meaningful guidance on how the Florida Supreme Court would decide what "clear liability" means when good faith liability defenses exist pre-suit.[3]

---

[2] Oral Argument, *Katherine Martinez v. GEICO Cas. Ins. Co.*, No. 24-10641 (11th Cir. argued May 1, 2025); Oral Argument, *Wayne Colello v. GEICO Gen. Ins. Co.*, No. 23-13689 (11th Cir. Argued Apr. 29, 2025).

[3] As courts have warned, applying *Rova Farms* (N.J.) in no-demand cases "imposes a more onerous obligation upon the insurer to seek settlement, than is imposed where an actual offer of settlement within policy limits is made." *Fulton v. Woodford*, 545 P.2d 979, 983 (Ariz. Ct. App. 1976).

Here, the panel extended *Powell* based on DUI and rear-end car accident cases where liability was effectively conceded. But this case is different. As the dissent observed, no Florida court has imposed *Powell* liability in such a context. (Dissenting Op. 8-9.) Other courts have explicitly declined to do so. *See, e.g.*, *Bohn v. Vermont Mut.*, 922 F. Supp. 2d 138, 147-48 (D. Mass. 2013); *Kavanaugh v. Interstate Fire*, 342 N.E.2d 116, 118 (Ill. App. Ct. 1975); *Steedly v. London & Lancashire*, 416 F.2d 259, 261–62 (6th Cir. 1969); *Fowler v. State Farm*, 454 P.2d 76, 81 (Mont. 1969).

Because *Powell* is a Florida common law doctrine, the Florida Supreme Court should determine its proper boundaries, not *Appleman*. *See NBIS Constr. & Transp. v. Liebherr-Am., Inc.*, 93 F.4th 1304, 1314-15 (11th Cir. 2024) (certifying interpretation of judge-made Florida doctrine where implications were uncertain).

Alternatively, the panel should reconsider its decision to publish, or the en banc Court should re-designate the opinion as unpublished to avoid creating binding precedent on an unsettled issue. *See Grigsby & Assocs. v. M Sec. Inv.*, 635 F. Appx. 728, 729 & n.1 (11th Cir. 2015); *Black v. United States*, 2002 WL 219866, at *1 (11th Cir. 2002). As the Florida Supreme Court warned, this Court's bad-faith precedent "does not always hit the mark." *Harvey,* 259 So. 3d at 7.

## CONCLUSION

The majority's opinion rewrites Florida bad faith law by discarding *Powell's* narrow two-prong test in favor of a sliding-scale standard no Florida court has endorsed. By allowing post-tender facts, the decision erases the legal guardrail that has long governed *Powell*. The Court should grant panel rehearing or, alternatively, rehearing en banc.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This petition for panel and en banc rehearing complies with the type-volume limit of Fed. R. App. P. 40(d)(3)(A) because, excluding the parts of the document exempted by 11th Cir. R. 40-4, this document contains 3,684 words. This petition for panel and *en banc* rehearing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-stye requirements of Fed. R. App. P. 32(a)(6) because this document is in a proportionally spaced typeface, Times New Roman 14-point.

## CERTIFICATE OF SERVICE

I CERTIFY that on May 19, 2025, this document was filed via the CM/ECF system. I further certify I am unaware of any non-CM/ECF participants.

/s/AARON WARREN
AARON WARREN